In the Matter of David A. FISHER and Judith D. Fisher, Debtors.

David A. FISHER and Judith D. Fisher, Plaintiffs,

v.

FIRST UNION MORTGAGE CORP., Frank W. Irwin, Substitute Trustee, and First Telco Credit Union of North Carolina, Defendants.

Bankruptcy No. B–86–00029 C–13. Adv. No. A–87–0074.

United States Bankruptcy Court, M.D. North Carolina.

Nov. 12, 1987.

William L. Osteen, Osteen, Adams & Tilley, Greensboro, N.C., for First Telco Credit Union of North Carolina.

Gerald S. Schafer, Greensboro, N.C., for debtors.

## MEMORANDUM OPINION

RUFUS W. REYNOLDS, Bankruptcy Judge.

THIS MATTER came on for hearing before this Court on October 5, 1987, in Greensboro, North Carolina before the Honorable Rufus W. Reynolds, United States Bankruptcy Judge for the Middle District of North Carolina, upon the Debtors' motion for preliminary injunction to allow the plaintiffs to remain in possession of certain real property.

Having considered Debtors' motion and brief in support thereof together with First Telco Credit Union's (First Telco) response thereto, all the written and oral evidence presented by the parties, and the argument of counsel, the Court now renders this Memorandum Opinion.

## FINDINGS OF FACT

David and Judith Fisher (Debtors) filed a petition under Chapter 13 of the United States Bankruptcy Code on January 24, 1986, and their plan was confirmed on April 8, 1986. The Debtors listed their residence, a house and lot located at 4118 Farmbrook Drive in Greensboro, North Carolina, as being worth $60,000. There were two mortgages on the residence. The first mortgage was held by First Union Mortgage Corporation (First Union) and executed on April 15, 1984, with an original amount of indebtedness of $13,700. The second deed of trust was executed on August 9, 1984, in the principal amount of $36,590 and was held by First Telco.

Upon application of the second mortgage holder, First Telco, and after notice and hearing, the automatic stay under 11 U.S.C. § 362 was lifted on October 20, 1986, as to First Union and First Telco as follows:

That the automatic stay under section 362 of said Code be, and the same is, hereby lifted for future defaults and that should the debtors fail to make payments as herein ordered, or allow to default in the instrument of mortgages to occur in the future, the mortgage holders may pursue any and all rights in the state court in order to foreclose upon this security.

The Debtors did default on the payment of the notes after the stay was lifted, and First Union began the state court foreclosure proceedings in the General Court of Justice of Guilford County, North Carolina. On July 9, 1987, the Clerk of Superior Court made findings and entered an order authorizing the foreclosure to proceed under state procedure. On August 6, 1987, the foreclosure sale took place with First Telco becoming the successful bidder at the price of $48,563. This bid was sufficient to cover the amount due on both notes covered by the first and second mortgages. The bid remained open for ten (10) days and thereafter the trustee collected the purchase price, filed his report of sale, and the Clerk of Court approved and audited the report. On August 27, 1987, a deed was delivered to First Telco and it was properly recorded the same day. In their brief the Debtors state that the foreclosure proceedings were procedurally proper and at no time during the state proceedings did the Debtors raise any objection to the sale or the purchase price.

The Debtors refused to move from the foreclosed property after requests by the new owners. When the Sheriff of Guilford County attempted to execute a writ of possession signed by the Clerk of Superior Court, the Debtors commenced this action in Bankruptcy Court. On September 28, 1986, the Debtors filed a motion for a temporary restraining order to remain in physical possession of the property. This motion was granted after hearing in chambers and the preliminary injunction hearing was scheduled on October 5, 1987.

The Debtors are seeking an injunction within the jurisdiction of this Bankruptcy Court pending the outcome of the case on the merits. In their suit, the Debtors contend that the foreclosure sale price was insufficient and it should be set aside by this Court as a fraudulent transfer under section 548 of the Bankruptcy Code. The Debtors contend that the fair market value of the property is at least $65,000 at the time of foreclosure and that as a result of the activities of First Telco, the Debtors have suffered actual damages of $16,937.

On October 5, 1987, the Court heard oral arguments of counsel and ordered that the parties file briefs on the issue of whether or not the Bankruptcy Court has jurisdiction over state court foreclosure proceedings involving property which was released from the stay in a Chapter 13 bankruptcy. The Court now makes the following findings and conclusions of law.

## DISCUSSION AND CONCLUSIONS OF LAW

■ Under Bankruptcy Rule 7065, the Bankruptcy Court is mandated to apply Rule 65 of the Federal Rules of Civil Procedure when faced with a motion for preliminary injunction by a party in interest. When determining whether or not to grant injunctive relief under section 105 or Bankruptcy Rule 7065, the Bankruptcy Court must determine four factors: (1) whether the plaintiff has shown a strong likelihood or probability of success on the merits; (2) whether the plaintiff has shown irreparable injury; (3) whether the issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing a preliminary injunction. *In the Matter of Baldwin–United Corp.*, 13 C.B.C.2d 180 (Bankr.S.D.Ohio 1985).

In addition to meeting the burden required under Rule 7065, the plaintiffs must also establish that the Bankruptcy Court has jurisdiction to grant the relief requested in this matter. It is significant to note that the plaintiffs are not contending that the foreclosure proceeding filed by First Union in the Office of the Clerk of Superior Court of Guilford County, North Carolina failed to conform to the laws of the state of North Carolina. Instead, the plaintiffs' sole allegation is that the foreclosure sale is a fraudulent transfer under Code section 548(a) and that this Court should exercise jurisdiction to set aside the sale pursuant to that section. Section 548(a) of the Bankruptcy Code provides:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred *on or within one year before the date of the filing of the petition,* if the debtor voluntarily or involuntarily—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured. 11 U.S.C. section 548(a) (Emphasis added)

A careful reading of that section indicates that § 548(a) is only applicable when the trustee attempts to avoid fraudulent transfers which occurred on or within one year before the date of the filing of the petition. In the case at hand, the property was not transferred until some time after the bankruptcy petition had been filed and the proceeding was underway.

■ In support of their argument, the plaintiffs cite *Durrett v. Washington National Insurance Company* and related cases holding that a nonjudicial foreclosure sale could be set aside in bankruptcy if the sale price was not adequate. 621 F.2d 201 (5th Cir.1980) *Durrett,* as well as other cases out of the Western and Eastern Districts of North Carolina cited by the plaintiff, dealt with the Bankruptcy Court's right to review the sufficiency of a foreclosure sale price when the foreclosure was brought prior to the filing of the petition in bankruptcy. *See, In the Matter of Myrtle T. Marshall,* 15 B.R. 738 (Bankr.W.D.N.C. 1981); *In the Matter of Lakeview Investment Group, Inc.,* 40 B.R. 449 (Bankr.E.D. N.C.1984). *Durrett* and the North Carolina cases cited by the debtor involved motions properly brought under Code section 548(a) since they involved the question of transfers of interest which occurred on or within a year before the date of the filing of the petition. The transfer of the Debtors' property did not occur until after the bankruptcy petition was filed and the property had been released from the automatic stay pursuant to section 362 of the Bankruptcy Code. Therefore, this Court finds that section 548(a) is inapplicable to the situation at hand.

Neither the Court nor the parties involved have been able to find a case directly on point with this issue. The plaintiffs cite the case of *In re Fandetti* which on its face appears very similar in that the Bankruptcy Court did lift the stay after the petition was filed for foreclosure proceedings and then, upon motion of the parties, required that the property be resold because an inadequate purchase price was obtained. 76 B.R. 21 (Bankr.D.R.I.1987). While the facts appear quite similar, the legal question presented in the case is different. In the *Fandetti* case all parties *consented* to the relief sought by the plaintiff in the Bankruptcy Court. Therefore, the *Fandetti* court never addressed the question of the propriety of the Bankruptcy Court exercising jurisdiction after property was released from the automatic stay and sold in a postpetition foreclosure sale. *See Id.*

In the absence of legal precedent for the case at hand, the Court must look to guidance from similar areas of bankruptcy law such as jurisdiction after abandonment of property by the Bankruptcy Court. There are numerous cases which have held that once property is knowingly and properly abandoned, the abandonment should be irrevocable and beyond the control of the trustee or the Court except under unusual or extenuating circumstances. *See, In re William A. Bryson, Sr., et al.,* 53 B.R. 3 (Bankr.M.Tenn.1985); *In the Matter of Steve P. Enriquez, et al.,* 22 B.R. 934 (Bankr.D.Neb.1982). In the *Enriquez* case, the trustee attempted to bring a discrimination claim of the debtors back into the estate once it had been abandoned. After abandonment, the debtor received $6,250 on the claim. The trustee attempted to set aside the abandonment and the Court found:

> The effect of abandonment by a trustee of control over the property because once abandoned, the property is no longer a part of the bankruptcy estate. In consequence of this removal from the estate ..., abandonment once accomplished is irrevocable regardless of any subsequent discovery that the property had greater value than previously believed. 4 Collier on Bankruptcy 554.02 (15th ed. 1986)

In an abandonment case involving real property, the trustee determined that there was no equity in the residence belonging to the debtor and properly proceeded to abandon the property. *In re Sutton,* 10 B.R. 737 (Bankr.E.D.Va.1981). When the property sold, $7,000 of equity was realized and the trustee requested revocation of the abandonment. The Court held that once the property was abandoned, it would be irrevocable and beyond the control of the trustee. *Id.*

This Court is not unmindful that it possesses broad general powers under section 105 of the Bankruptcy Code to grant whatever relief is necessary to effectuate the provisions of the Bankruptcy Code. This broad authority and power of the Bankruptcy Court is well settled by codification and case law. Once a petition is filed, it is

clear that all property which the debtor retains any interest in comes under the jurisdiction of the Bankruptcy Court. However, the Bankruptcy Code also allows the Bankruptcy Court to release property from its jurisdiction pursuant to an abandonment, relief from the automatic stay and/or the removal or remand to another court's jurisdiction, or to refuse to exercise jurisdiction under the abstention provisions provided for in section 1471(d). This point was recently emphasized in the case of *Browning v. Navarro* where the Fifth Circuit held that once a Bankruptcy Court remanded a state court action to the state court for final determination, the Bankruptcy Court was divested of jurisdiction upon the party's compliance with the remand order and was powerless to issue an order bringing the case back within its jurisdiction. 743 F.2d 1069 (5th Cir.1984).

■ The underlying theme in the authority cited above indicates that although the Bankruptcy Court has broad jurisdiction to hear almost any civil case and has exclusive jurisdiction over the property of the debtor, this exclusive jurisdiction does not limit the Bankruptcy Court's power to lift the automatic stay and allow another court of competent jurisdiction to decide finally issues affecting property of the debtor. *In re Wallace*, 33 B.R. 29 (Bankr.D.Mi.1983). Real property rights, especially foreclosure proceedings, are an area of recognized state court expertise. It is the opinion of this Court that, in the context of this case, the validity of the state court foreclosure sale is a question which remains exclusively within the jurisdiction of the state court. *See, Lincoln v. Phillips*, 31 B.R. 398 (Bankr.S.D.Ohio 1983). Absent unusual and compelling circumstances or a particularly egregious fact situation, a Bankruptcy Court should not exercise its broad jurisdictional mandate as provided by section 105, to upset a perfectly proper and valid state court foreclosure proceeding which took place after the bankruptcy petition was filed and after the Court released the property from the automatic stay pursuant to section 362.

It is clear that the facts in this case require the Court to find that the Debtors do not have a cause of action and, therefore, their motion for a preliminary injunction cannot be granted and the adversary proceeding should be dismissed. Both parties agreed that the sale was accomplished in compliance with the North Carolina Statutes controlling foreclosure proceedings. *See, N.C.Gen.Stat.* § 45–4 *et seq.* There is no evidence before this Court that the Debtors did not receive due process under state law. The Debtors' contention that the foreclosure sale was fraudulent is based entirely upon the fact that the property sold for $48,553 instead of the claimed fair market value of $65,000.

The Debtors' property was properly released from the Chapter 13 bankruptcy estate pursuant to the creditor's motion for relief from stay when the Debtors could not make payments on the property after given ample time to do so. Once the property was foreclosed, the creditors took every step necssary to comply with the state foreclosure proceeding requirements, and First Telco successfully purchased the property at a foreclosure sale which was valid in every respect. At each stage of the state proceedings the Debtors remained silent and did not exercise their right to assert allegations of a fraudulent sale. The mere fact that the purchase price is perceived to be inadequate in the eyes of the Debtors, standing alone, is not enough for the Bankruptcy Court to invoke extraordinary injunctive jurisdiction and bring the property back into the bankruptcy estate. Not only the facts in this case, but public policy, judicial economy, and the necessity of finality in the state foreclosure context require such a result. Should this Court find that it has the power, absent compelling circumstances to, in effect, nullify a perfectly valid state foreclosure proceeding, all state foreclosure proceedings would be clouded and chilled by a prospective bidder's realization that a sale for less than the Debtors' claim of fair market value could be invalidated despite compliance with the state court requirements and approval.

### ORDER

Pursuant to the Memorandum Opinion filed contemporaneously herewith,

IT IS ORDERED, ADJUDGED AND DECREED that the temporary restraining order is hereby quashed and the Debtors' motion for a preliminary injunction is DENIED; and

IT IS FURTHER ORDERED that the Debtors' adversary proceeding number A–87–0074 filed to set aside the transfer of real property is hereby DISMISSED.