In re **RIDGEMONT APARTMENT ASSOCIATES, Debtor.**

**Bankruptcy No. A88–02855–WHD.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Sept. 28, 1989.

As Amended Oct. 4, 1989.

See also 95 B.R. 247.

Stephen C. Greenberg, Holt, Ney, Zatcoff & Wasserman, Atlanta, Ga., for debtor.

C. Richard McQueen, Greene, Buckley, Derieux & Jones, Atlanta, Ga., for Secured Creditor, Atlanta English Village, Ltd.

Russell A. Tolley, Long, Aldridge & Norman, Atlanta, Ga.; for Atlanta Gas Light Co.

## ORDER

STACEY W. COTTON, Bankruptcy Judge.

Before the court are two motions for an order directing the receiver to pay certain unpaid operating expenses. These are core matters pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (M), and (O). After consideration of the stipulation of facts, the record in this matter, and the briefs of the parties, the court's findings of fact and conclusions of law are as set forth hereinafter.

## FACTS

Debtor Ridgemont Apartment Associates, Ltd. ("Ridgemont") filed its Chapter 11 petition on April 1, 1988. Debtor's primary asset was the real property known as the Ridgemont Apartments located at 7275 Roswell Road, N.W., Atlanta, Fulton County, Georgia (the "property"). Debtor's primary sources of income were the rents and incidental revenues derived from the operation of the property.

Ridgemont purchased the property from Atlanta English Village, Ltd. ("AEV") which claimed a security interest in the property and in the rental and other proceeds by virtue of a second-in-priority wrap-around note and security deed. The Federal Home Loan Mortgage Corporation ("FHLMC") claimed a security interest in the property and in the rental and other proceeds by virtue of a first-in-priority note and security deed. By order entered August 11, 1988, the court found that the debtor had no equity in the property because its value was less than the combined liens of AEV and FHLMC.

On December 14, 1988, the court entered an order authorizing debtor to use cash collateral. The debtor-in-possession[1] was authorized to pay the actual and necessary expenses incurred in the ordinary course of the operation and maintenance of the property, including expenses for utility bills. By order of February 15, 1989, the court denied the debtor's first amended plan of reorganization and ordered that "relief from the automatic stay is GRANTED to the extent that the automatic stay of § 362 is terminated as to AEV."

Thereafter, upon application of AEV, the Fulton County Superior Court appointed Frank W. Scroggins as receiver for the property effective February 23, 1989. The receiver took possession of the property and collected rents and other income from February 23 through April 4, 1989. Atlanta English Village foreclosed the subject real property under its power of sale on April 4, 1989.

The receiver collected a total of $235,125.83 and incurred operating expenses of $92,780.33. From the funds collected, the receiver paid $116,655.66, including $41,-

---

1. Pursuant to 11 U.S.C. § 1101(1) " 'debtor in possession' means debtor except when a person that has qualified under section 322 of this title is serving as trustee in the case[.]"

134.09 in operating expenses. Presently, the receiver has a balance on hand of $118,-470.17 with unpaid receivership operating expenses of $51,646.24. The Chapter 11 debtor has prior unpaid Chapter 11 operating expenses of $69,783.05. Movant, Atlanta Gas Light Company ("AGLC"), is owed unpaid Chapter 11 utility bills incurred prior to February 23 approximating $17,000 and unpaid receivership utility bills approximating $13,000. The parties have stipulated that $11,082.59, representing tenant security deposits, and $12,803.84, representing ad valorem tax escrow deposits, were turned over to the receiver by the debtor and are not involved in this dispute.

In addition, the Chapter 11 debtor retained certain funds in its operating account. At a May 10, 1989 chambers conference, Judge W. Homer Drake [2] instructed that debtor transfer $27,241.38 from its operating account to an interestbearing money market account in the name of debtor's counsel.[3] These funds were to be held in escrow pending resolution of these motions.

Debtor's initial motion requests an order directing AEV [4] to refund a $69,416.67 payment. Debtor further seeks an order directing the receiver to pay the unpaid Chapter 11 expenses as of February 23, 1989 in full or on a pro rata basis before any payment is made to AEV or FHLMC. The joint motion of debtor and AGLC seeks an order directing the receiver to pay AGLC for all postpetition gas service to the property from funds held by the receiver.

Counsel for the various parties and the receiver conferred with the court in chambers on June 14, 1989 and August 30, 1989. Following the August 30 conference, the parties filed a stipulation of facts, which is incorporated by reference.

## DISCUSSION

Subject matter jurisdiction of the bankruptcy court is determined by 28 U.S.C. § 1334 which provides:

> (d) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of the property of the estate.

28 U.S.C. § 1334(d). Pursuant to 28 U.S.C. § 157(a) each district court is authorized to refer any and all cases under title 11 to the bankruptcy judges for the district. Such reference has been made in this district.[5] The bankruptcy court, therefore, has exclusive jurisdiction over the property of the estate and of the debtor, wherever located, as of the commencement of the case. 28 U.S.C. § 1334(d). Rents received from the property of the estate are included expressly as property of the estate. 11 U.S.C. § 541(a)(6).

The court must first consider the effect of this court's termination of the section 362(a) automatic stay, if any, upon this court's jurisdiction. Atlanta English Village, FHLMC, and the Signature Group ("respondents")[6] contend that this court does not have jurisdiction to hear these

---

2. A hearing on the motions was scheduled for June 14, 1989 before the Honorable W. Homer Drake. Prior to that hearing, Judge Drake recused himself and referred the matter to the undersigned.

3. According to the parties' stipulation filed on September 7, 1989, the debtor-in-possession had $27,546.28 in its operating account on February 22, 1989. There is no explanation why the sum deposited in the money market account does not balance with this sum. As of June 30, 1989, the balance in this account was $27,383.38.

4. This appears to be an error in debtor's motion. In paragraph 8 of its motion and in the court's cash collateral order the $69,416.67 payment allegedly was made or to be made to FHLMC,

not AEV. *See* Debtor's Motion for Order Directing Payment of Post Petition Operating Expenses from Cash Held by the Receiver at 3, ¶ 8 (filed May 4, 1989); Order Authorizing Use of Cash Collateral Commencing as of June 1, 1988 at 7, ¶ 5 (filed Dec. 14, 1988).

5. Order of Reference (N.D. Ga., July 12, 1984).

6. Counsel for FHLMC admits that the issue is moot as to it but submitted a brief on the issue for the court's information. The Signature Group submitted a brief and claims to be a party in interest inasmuch as it has purchased the property from AEV. The court finds it unnecessary to decide if they have standing on this issue since their position is defended by AEV.

motions because it relinquished jurisdiction by lifting the automatic stay, or alternatively, this court should abstain from hearing these motions in the interest of comity. Debtor and AGLC ("movants") contend that this court has exclusive jurisdiction of the assets of the estate, including the rents collected by the receiver, which remain property of the estate. They argue that although the court may abstain from hearing the matter in the interest of comity with the state court, it should not do so under the circumstances of this case.

Respondents cite three cases as authority that lifting the automatic stay acts to relinquish the court's jurisdiction over property affected by such an act. *See Wilson v. Bill Barry Enters.*, 822 F.2d 859 (9th Cir. 1987); *Hood v. Williams (In re Hood)*, 92 B.R. 648 (Bankr.E.D.Va.1988), *aff'd*, 92 B.R. 656 (E.D. Va.1988); *Fisher v. First Union Mortgage Corp. (In re Fisher)*, 80 B.R. 58 (Bankr.M.D.N.C.1987). The *Wilson* court provided no authority at all for its conclusion. The courts in *In re Hood* and *In re Fisher*, while pointing to no express provision in the Code, reached their conclusions drawing a parallel with the concept of a trustee's "abandonment" of property under section 554. *In re Hood*, 92 B.R. at 655; *In re Fisher*, 80 B.R. at 61–62.

■ The court does not agree. Termination of the automatic stay is neither analogous to, nor the equivalent of, an abandonment of property of the estate. Notwithstanding relief from the stay, the bankruptcy court's jurisdiction of the property continues, but is subject to being changed. *See Desmarais v. Northern Nat'l Bank (In re Desmarais)*, 33 B.R. 27, 28 (Bankr.D.Me.1983). For example, a surplus resulting from a foreclosure sale continues to be property of the debtor's estate, subject to the bankruptcy court's exclusive jurisdiction, even though relief from stay has been granted to the secured creditor. *In re Hood*, 92 B.R. at 651. In such instance, the claim of the creditor who obtained stay relief is satisfied and the creditor has no further right or claim to any surplus.

Section 362(d) authorizes the court to grant relief from the stay for cause by "terminating, annulling, modifying, or conditioning" the stay. 11 U.S.C. § 362(d). Clearly, congress intended to give the court considerable flexibility to fashion relief to protect the interests of both the moving party and the debtor's estate. *See generally* 2 *Collier on Bankruptcy* ¶ 362.07 (15th ed. 1989). When this court terminates the stay, it simply removes the bankruptcy restraints prohibiting a claimant's exercise of contractual and nonbankruptcy rights or remedies with regard to the matter for which stay relief is granted. *See In re Dibbern*, 61 B.R. 730, 731 (Bankr. D. Neb.1986).

In the instant case, AEV sought relief from the automatic stay to permit the exercise of contractual and nonbankruptcy remedies regarding its collateral. There is no contention that AEV sought, or was granted, relief to pursue claims or rights apart from its collateral. As permitted under its documents and state law, AEV elected to obtain the appointment of a state court receiver to take possession of the collateral and collect the rents, pending foreclosure. The bankruptcy court thus permitted the creditor to invoke the state court jurisdiction for this purpose.

This court should not, and will not, disturb the state court custody in the exercise of its jurisdiction absent unusual and compelling circumstances. *See In re Fisher*, 80 B.R. at 62. In the present case no such unusual or compelling circumstances have been shown to exist. If the debtor desired this court to retain its exclusive jurisdiction of future rents pending foreclosure, it should have requested such relief during the stay relief hearings.

■ The respondents also contend that even if the court has jurisdiction, it should abstain under the provisions of 28 U.S.C. § 1334(c)(1). The issue, however, is not one of abstention but, rather, whether this court should reimpose a stay and reassert its exclusive jurisdiction with respect to rents in the possession of the state court receiver. This court is of the opinion that it should not.

The section 362(a) stay was terminated because the Chapter 11 debtor could not provide adequate protection to AEV or formulate a confirmable Chapter 11 plan of reorganization. The subject rents are proceeds of AEV's collateral in the custody of the state court collected after relief from the stay. No legal basis has been shown for subjecting these rents to payment of the debtor's unpaid Chapter 11 operating expenses. Once the stay was terminated, trade creditors of the Chapter 11 debtor had no reasonable expectation that future rents collected by the receiver would be used to pay the unpaid Chapter 11 operating expenses. It is for the state court to determine the proper disposition of the rents in its custody and its receiver's possession.

While debtor's motion sought a turnover of the $69,416.67 payment to AEV by the receiver, the parties' September 7 stipulation did not identify any such disbursement. Further, it appears that the debtor has abandoned this claim. Assuming, however, that a payment was made, for the reasons stated above this court concludes that the state court should make the determination as to the proper disposition of all receivership funds.

Movants contend that the post filing Chapter 11 trade creditors are entitled to protection and consideration by this court of their unpaid administrative expense claims under 11 U.S.C. § 506(c). That section provides that:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

11 U.S.C. § 506(c). However, it is clear from this record that these unpaid Chapter 11 expenses were incurred in the ordinary course of debtor's business. As noted by the respondents, any benefit to the secured creditor, AEV, during the Chapter 11 was merely incidental to the debtor's attempt to remain in possession of the property. The court finds this argument to be without merit as these unpaid expenses were not incurred as "reasonable, necessary costs ... of preserving, or disposing of ... property" for the benefit of the secured creditors.

█ The court's view is different, however, with respect to the rents in the possession of the debtor or its counsel. Although the disposition of these funds was not addressed specifically in either of the written motions, the matter was raised in the in-chambers conferences. While termination of the stay would have permitted AEV to obtain a turnover of such funds, in fact, this never occurred. This court never relinquished, and has continued to exercise, its exclusive jurisdiction of the debtor and these rents. For example, at the in-chambers conference on May 10, 1989, Judge Drake directed that the funds be transferred from the debtor's control to an escrow account in debtor's counsel's name, pending disposition of these motions. Further, these funds have never been in the custody or possession of the state court or its receiver. Accordingly, this court continues to have exclusive jurisdiction of these escrowed funds and will determine their disposition.

It is undisputed that the debtor was authorized to use cash collateral to pay the actual and necessary expenses incurred in operating the property. The Chapter 11 trade creditors, therefore, had a reasonable expectation that any such cash collateral would be used by the debtor to pay operating expenses in the ordinary course. The funds in possession of debtor's counsel are such cash collateral. While the debtor was authorized to use these rents to pay operating expenses, for some reason it failed to do so. The collection and application of these rentals are within the intent and purpose of the cash collateral order authorization. To hold otherwise would undermine the policy considerations of Chapter 11 and frustrate the reasonable expectations of trade creditors who deal with a Chapter 11 debtor based upon the court's authorization to use cash collateral. The court concludes, therefore, that these funds should be applied pro rata to payment of the unpaid Chapter 11 operating expenses, exclusive of professional and management fees

and expenses. This determination, however, is without prejudice to the right of any party to challenge the validity or amount of any specific claim. Accordingly, it is

ORDERED that debtor's motion that the court direct AEV to refund to the receiver the payment of $69,416.67 is DENIED, and it is

FURTHER ORDERED that the debtor and AGLC's motions that the court direct payment of unpaid Chapter 11 operating expenses from rents or income in the possession and custody of the state court and its receiver are DENIED without prejudice to the movants to assert their claims before the state court, and it is

FURTHER ORDERED that the debtor shall apply the funds on deposit in the money market account in the name of debtor's counsel in payment of the unpaid Chapter 11 operating expenses incurred prior to February 23, 1989, exclusive of professional and management fees and expenses, with payment to be made on a pro rata basis until the expenses are paid in full or the funds are depleted, and it is

FURTHER ORDERED that within thirty (30) days of the entry of this order the debtor is directed to prepare and file a detailed list of all such unpaid Chapter 11 operating expenses, exclusive of professional and management fees and expenses, which shall set forth the date incurred, the name of the claimant, the nature of the obligation, the amount, whether disputed or undisputed (if disputed, a brief statement of the nature of the dispute), and the amount proposed to be distributed to each claimant, and it is

FURTHER ORDERED that the debtor shall serve a copy of the list upon counsel for Atlanta Gas Light Company, Atlanta English Village, or their respective counsel, and such parties shall have fifteen (15) days from the date of service to examine the list and file in writing any objection thereto that they may have, with a copy of such objection to be served upon debtor's counsel, and failure to timely file any such objections shall be deemed to be a waiver thereof, and debtor will be authorized to make distribution as proposed, unless the court orders otherwise, and it is

FURTHER ORDERED that any objection filed will be set for hearing upon notice to the debtor, AEV, AGLC and the objecting party, and such other parties in interests as the court may direct.

IT IS SO ORDERED.