**In re Galen Monroe OAKES, Beulah Lehman Oakes dba Oakes Management, Debtors in Possession.**

**Bankruptcy No. 690–01663.**

United States Bankruptcy Court, N.D. Ohio.

May 2, 1991.

---

Andrew J. Michaels, Daniel J. McGown, Akron, Ohio, for Galen Monroe and Beulah Lehman Oakes.

Gordon W. Johnston, Porter, Wright, Morris & Arthur, Columbus, Ohio, for Aetna Life Ins. Co.

James W. Ehrman, Manchester, Bennett, Powers & Ullman, Youngstown, Ohio, for Commonwealth Life Ins. Co.[1]

## MEMORANDUM OF DECISION

JAMES H. WILLIAMS, Chief Judge.

The debtors in possession, Galen Monroe Oakes and Beulah Lehman Oakes, dba Oakes Management (Oakes or Debtors), filed a Motion for Instructions on April 9, 1991 and requested the court to clarify what, if any, impact the granting of relief from the automatic stay to Aetna Life Insurance Company (Aetna) has on the prior adequate protection orders entered by this court. The parties submitted briefs and a hearing was held on April 25, 1991.

The court has jurisdiction in this matter by virtue of 28 U.S.C. § 1334(b) and General Order No. 84 entered in this district on July 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (G) and (M). This Memorandum of Decision constitutes the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

## PROCEDURAL HISTORY

Debtors filed their Chapter 11 petition on August 14, 1990. Aetna, the first lien holder on certain parcels of real property which comprise a portion of the Oak Park Centre shopping complex in Massillon, Ohio, filed a Motion for Sequestration, Turnover and Accounting of Cash Collateral regarding the rents paid to Oakes. On November 14, 1990, the court heard Aetna's motion and issued its order granting Aetna adequate protection by ordering Debtor to pay the net rents[2] to Aetna by the fifth day of each successive month and to provide Aetna with an accounting of rents and expenses on a monthly basis.

On January 25, 1991, Aetna moved for relief from stay based on lack of equity in the property, the property not being necessary to an effective reorganization, and lack of adequate protection. At hearing on March 4, 1991, the parties represented to the court that the matter had been resolved and submitted an order declaring the automatic stay "immediately terminated."

On April 9, 1991, Debtors filed their Motion for Instructions as to the effect of the lifting of the automatic stay on the prior adequate protection order, evidencing a concern as to whether the requirement that net rents be paid to Aetna continued in force. Debtors filed a brief in support of their motion on April 19, 1991. Aetna's response and Debtors' supplemental brief were filed April 25, 1991 just prior to the hearing.

---

1. Commonwealth is the first lien holder on the former Ames store located in Oak Park Centre, and was granted relief from stay concurrently with Aetna. Although the motion refers solely to the pleadings related to Aetna, Oakes' brief in support thereof addresses the relief from stay as granted to both Aetna and Commonwealth. The court limits its consideration to the issues as involving Aetna.

2. Net rents are defined as rents received less a five percent management fee to Oakes and payment of ordinary, necessary and reasonable expenses, including pro rata insurance premiums and tax escrow payments.

## DISCUSSION

Debtors submit, on various bases, that the lifting of the automatic stay served to terminate the adequate protection order and Aetna is now limited to exercising its rights and remedies under the loan documents executed by the parties and under state law. Debtors infer that this court relinquished jurisdiction over the rents when it terminated the stay and should not re-assert it. In addition, because Aetna requested alternate forms of relief in its motion, i.e., relief from stay or adequate protection, Debtors urge that these concepts are mutually exclusive because adequate protection gives a creditor an alternate means of protecting its interest while the stay remains in place.

Aetna, which has taken no action to enforce its rights in the rents in the interim since it received relief from stay, urges that jurisdiction remains with this court and the act of granting relief from stay makes no determination of the parties' substantive rights. Debtors, in Aetna's view, therefore continue to be bound by the adequate protection order and must remit the net rents to Aetna.

This issue is apparently one of first impression in any jurisdiction on these specific facts, although a few opinions touch on the concept of concurrent jurisdiction once relief from stay has been granted. The cases cited by Debtors, upon further review, have little application to the instant fact situation. In *In re DeJesus Saez*, 721 F.2d 848 (1st Cir.1983), the court made a procedural ruling based on the fact that the automatic stay is lifted immediately upon dismissal of a petition. *Wilson v. Bill Barry Enterprises, Inc.*, 822 F.2d 859 (9th Cir.1987) offers an example of a bankruptcy court relinquishing jurisdiction to a state court. However, the holding was based on construction of California law concerning a lessee's right to petition for reinstatement of a lease in response to an unlawful detainer proceeding in state court. This court does not read *Wilson* to hold that granting relief from stay automatically divests the bankruptcy court from jurisdiction over the estate property involved. *In re Mellor*, 31 B.R. 151 (Bankr. 9th Cir.1983) involved the validation of a post-petition judgment taken in violation of the automatic stay and is also distinguishable from the instant situation.

The case most similar factually which the court has found or had drawn to its attention is *In re Ridgemont Apartment Assocs.*, 105 B.R. 738 (Bankr.N.D.Ga. 1989). There, the cash collateral order also provided for a turnover of rents on a net basis. After receiving relief from stay, the mortgagee had a receiver appointed in state court who took possession of the property and collected rents for a period prior to foreclosure. The debtor later filed a motion in bankruptcy court concerning disposition of the collected rents. The court held that termination of the stay "simply removes the bankruptcy restraints prohibiting a claimant's exercise of contractual and nonbankruptcy rights or remedies ..." and does not divest the court of jurisdiction over the involved property. *Id.* at 741 *Accord In re Fricker*, 113 B.R. 856 (Bankr.E.D.Pa.1990). "Notwithstanding relief from the stay, the bankruptcy court's jurisdiction of the property continues, but is subject to being changed." *Ridgemont*, 105 B.R. at 741. The *Ridgemont* court declined to reassert jurisdiction, but on the basis that no unusual or compelling circumstances existed to disturb the jurisdiction of the state court which appointed the receiver. In the matter at hand, no state court proceeding has been filed which would provide a basis for this court to relinquish its jurisdiction over the cash collateral. While relief from stay permits a creditor to exercise its rights and remedies under applicable nonbankruptcy law, it does not mandate that such rights and remedies be exercised immediately. Under the reasoning of *Ridgemont*, this court continues to exercise jurisdiction over the rents as property of the estate until such time as some action is taken which would compel this court to relinquish jurisdiction to a state court. The order of November 14, 1990 requiring Debtors to pay the net rents to Aetna is not superseded or displaced by

the granting to Aetna of relief from stay, and remains in full force and effect.