In re M.J. CORDRY, Debtor.

Joseph I. WITTMAN, Trustee, Plaintiff,

v.

Doug TOLL and Maureen
Toll, Defendants.

Joseph I. WITTMAN, Trustee, Plaintiff,

v.

Ray TOLL and Irene Toll, Defendants.

Bankruptcy Nos. 86–41504, 91–4036–
SAC and 91–4046–SAC.
Adv. Nos. 88–0097, 88–0098.

United States District Court,
D. Kansas.

Jan. 22, 1993.

Dan E. Turner, Phillip L. Turner, Dan E. Turner Law Offices, Topeka, KS, for defendants.

Donald E. Bucher, Moore & Bucher, P.C., Kansas City, MO, for Joseph I Wittman.

William H. Griffin, Topeka KS, for M.J. Cordry.

## MEMORANDUM AND ORDER

CROW, District Judge.

This bankruptcy appeal began with the defendants in the adversary actions appeal-

ing the bankruptcy court's holding that the trustee was entitled to recover certain real property which the debtor had conveyed to the defendants. Consolidated with this appeal is the trustee's cross appeal in which he argues the bankruptcy court erred in not awarding the trustee the profits earned by Doug and Maureen Toll from the real property that had been fraudulently conveyed to them. Both appeals arise from the bankruptcy filed by the debtor, M.J. Cordry, first under Chapter 11 and then voluntarily converted to Chapter 7. Before going to the issues, some background is required.

On May 31, 1988, the trustee filed the two adversary actions. In the action against defendants Roy and Irene Toll, the trustee sought to avoid pursuant to 11 U.S.C. § 544(a)(3) the debtor's transfer of real estate to the defendants alleging that his interest was superior to the defendants for they had not recorded or perfected their interest as to be effective against a bona fide purchaser. In the action against defendants Doug and Maureen Toll, the trustee sought to avoid the debtor's transfer of real estate to the defendants pursuant to 11 U.S.C. § 544(a)(3) as the defendants' unrecorded interest was inferior to the trustee's bona fide purchaser status and pursuant to 11 U.S.C. § 544(a)(1) as the debtor had fraudulently conveyed the real property for negligible consideration thereby constituting a fraud upon the trustee in his judicial lien creditor status.

On April 11, 1988, the Farm Credit Bank of Wichita filed a motion for relief from stay to foreclose on the real estate that was the subject of the adversary actions. On April 27, 1988, the bankruptcy court granted the motion and ordered:

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED, that Movant proceed with the foreclosure of said real property and all interests therein, but shall not take any personal judgment against the Debtor in said foreclosure action, that the automatic stay as provided in 11 U.S.C. § 362(a) be removed and

that the rights and priorities of said creditor and all other creditors and lienholders be determined in said foreclosure action, or as may be agreed upon between the parties to said action, all without further invervention . (sic) of the above described Bankruptcy Court.

(Bkcy. No. 86–41504–7 Dk. 57). On May 1, 1988, the trustee filed suggestions in opposition to the motion for relief from stay. (Bkcy. No. 86–41504–7 Dk. 58). Since the written opposition was not timely, the trustee asked the court later at the hearing to consider his suggestions as a motion to modify. (Bkcy. No. 86–41504 Dk. 82). The trustee argued that the real property was worth more than the mortgage and that if the foreclosure action proceeded to a sheriff's sale then the pending adversary actions would become moot. The trustee, therefore, asked the bankruptcy court to limit the Farm Credit Bank's relief from the stay to the point of entering, but not executing upon, any judgment. At the hearing on the trustee's motion, the bankruptcy court ruled that the Farm Credit Bank should give notice to the trustee prior to any sheriff's sale so that a stay could be sought in the event that the adversary actions had not been resolved. The bankruptcy court directed the trustee's counsel to prepare an order to reflect this ruling, but no written order was ever filed.

Defendant Roy Toll passed away in 1988. On November 10, 1988, the attorney for Roy and Irene Toll filed a suggestion of death. (Bkcy.Adv. No. 88–0098 Dk. 12). On December 27, 1988, the trustee filed a motion to substitute Irene I. Toll, executrix of the estate of Roy L. Toll, for the deceased. (Bkcy.Adv. No. 88–0098 Dk. 13). The bankruptcy court never ruled upon this motion.[1] The defendants argue for the first time on appeal that the bankruptcy court was without jurisdiction to enter judgment against Roy Toll or his estate.

After reviewing the evidence and the parties' pleadings, the bankruptcy court entered its findings of facts and conclusions of law on the consolidated adversary ac-

1. Neither the estate of Roy Toll nor any attorney representing the estate has appeared or intervened in the bankruptcy proceeding or this appeal.

tions. As for Roy and Irene Toll, the court found that they purchased from debtor 145 acres at the stated price of $115,750 in January of 1986 on an installment contract but that they never recorded their interest in the land nor possessed the land in such a fashion that constructive notice was given to potential buyers. The court further found that Roy and Irene Toll were entitled to a net lien of $22,055.60 after deducting their profits from their mortgage payments, taxes and changes to the land. As for Doug and Maureen Toll, the court found that Doug Toll purchased from debtor in March of 1986 two tracts of land for the stated consideration of one dollar and the contingent promise to make mortgage payments in the event that his parents, Roy and Irene Toll, ever failed to pay. The court further found that Doug and Maureen Toll never recorded their interest in the land nor possessed it so as to provide constructive notice to subsequent purchasers and that they were entitled to no lien as their net profits equalled or exceeded the taxes they had paid on the land and as they were not good faith transferees. The court also concluded that the debtor had conveyed this land to Doug Toll with the intent to hinder, delay or defraud his creditors. Relying on the structure and wording of 11 U.S.C. § 550, the court, however, denied the trustee's request to recover Doug Toll's farming profits

ISSUE I: DID THE BANKRUPTCY COURT LOSE JURISDICTION TO DECIDE THE ADVERSARY ACTIONS WHEN IT GRANTED FARM CREDIT BANK RELIEF FROM THE STAY?

█ The defendants contend the expansive terms of the bankruptcy court's order granting relief from the stay was a final appealable order which effectively terminated the court's jurisdiction to decide the adversary actions and transferred to the foreclosure action all litigation of claims and interests to the land. The district court finds no merit to this argument and considers the defendants' interpretation of the stay order to lack reason and purpose.

The bankruptcy court's order says nothing about the court divesting itself of jurisdiction to decide the pending adversary actions or about the court dismissing or transferring the adversary actions. In fact, the order makes no specific mention of the trustee's adversary actions. It is plain from the four corners of this order that the bankruptcy court simply intended to authorize the Farm Credit Bank to proceed in another forum with the foreclosure on the property. At the hearing on the trustee's motion to modify, the bankruptcy court clarified any arguable ambiguity when it ordered the foreclosing creditor to notify the trustee before any sheriff's sale so that the stay order could be modified if necessary. Prior to the trial on the adversary actions, the bankruptcy court denied the defendants' motion to dismiss and reiterated its intentions:

> The Court believes what was granted was stay relief for the creditor to foreclose and determine the rights of foreclosure among the various lien creditors, that it did not intend at the time—And if the Order is unclear, the Court will recite that it was not the intent at the time that Order was entered to cause this adversary to be dismissed, that this adversary is brought by the Trustee, not by that creditor, to avoid a fraudulent transfer claim, and that that is not a mandatorily brought action with the state foreclosure action, and that the Court at the time reserved the right to have this continue and simply gave the creditor the right to go ahead and begin foreclosure proceedings, which would not interfere with the fraudulent transfer action that was presently on file.

(Bkcy.Adv.Trans.Dk. 72 at 10–11). Plainly, the bankruptcy court neither stated nor intended to state that it was relinquishing jurisdiction over the adversary actions.

█ The above interpretation of the bankruptcy court's orders is consistent with the general proposition that a bankruptcy court has continuing jurisdiction over property of the estate. Relief from the stay simply removes the bankruptcy restraints on a claimant's right to pursue contractual and non-bankruptcy remedies as to the matter in question. *In re Ridgemont Apartment Associates*, 105 B.R. 738, 741 (Bankr.N.D.Ga.1989). This alone

does not divest the bankruptcy court of jurisdiction over the property. *Id.; See also In re Oakes,* 129 B.R. 477, 479 (Bankr. N.D.Ohio 1991); *In re Fricker,* 113 B.R. 856, 864 (Bankr.E.D.Pa.1990). Indeed, jurisdiction is considered to be continuing until some action is taken which would necessitate the relinquishment of jurisdiction. *In re Oakes,* 129 B.R. at 479. The terms of 11 U.S.C. § 362(d) give the bankruptcy court "considerable flexibility to fashion relief to protect the interest of both the moving party and the debtor's estate." *In re Ridgemont Apartment Associates,* 105 B.R. at 741 (citations omitted).

The bankruptcy court in the case *sub judice* did fashion relief from the stay by allowing the foreclosure action to proceed and by reserving the right to modify the relief before a judicial sale if necessary to avoid prejudicing or mooting the trustee's adversary actions. The bankruptcy court acted lawfully in retaining jurisdiction over the property and adjudicating the adversary actions.

ISSUE II: DID THE BANKRUPTCY COURT HAVE JURISDICTION OVER THE ESTATE OF ROY TOLL?

■ The bankruptcy court failed to enter an order granting or denying the trustee's motion to substitute the estate of Roy Toll for the decedent. This court will not belabor this order with any detailed discussion of this issue for it believes the issue is not properly before it. The appellants have failed to show their standing to challenge the bankruptcy court's personal jurisdiction over the estate of Roy Toll. Assuming the appellants have standing, they have waived their issue by waiting until their appeal to present it for the first time. *In re Franz,* 97 B.R. 603, 605 (D.Kan.1989). Quite simply, the defendants could have advanced this issue before the bankruptcy court but chose not to, and this issue is not one, like subject matter jurisdiction, which may be raised at any time.

ISSUE III: DID THE BANKRUPTCY COURT ERR IN RELYING ON THE TESTIMONY OF TIM OHLDE TO DETERMINE CROP INCOME?

■ The standard of review on this issue is found at Bankr.Rule 8013, which reads:

On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

A finding is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

In this case, the bankruptcy court simply considered the testimony of Tim Ohlde to be more credible than that given by the defendant Doug Toll. The bankruptcy court was in the best position to determine the candor and credibility of both witnesses. Specifically, the bankruptcy court noted that Tim Ohlde's testimony as to the crop yields and prices was based on several sources, including the defendants' declarations and county averages. The defendants did not contest much of Ohlde's testimony, and what they did disagree with was contradicted by only what they happened to remember rather than any farm records that they might have kept on the farming operations. The bankruptcy court believed the defendants were "less than candid" on these matters considering that it was their operations and the records should have been available to them. The bankruptcy court's reliance on the testimony of Tim Ohlde is not clearly erroneous.

ISSUE IV: DID THE BANKRUPTCY COURT ERR IN FINDING THAT DOUG TOLL PAID $1 INSTEAD OF $15,060.33 FOR THE TWO TRACTS OF LAND?

■ At trial, Doug Toll testified that he paid the debtor $15,060.33 in grain and PIK certificates for the two tracts of land. For a number of reasons, the court did not believe this testimony and found that the

defendant had paid $1 for the land as was stated in the contract. First, Doug Toll answered interrogatories in July of 1988 stating that he paid only $1 for the land. Second, in his subsequent deposition, Doug Toll produced a receipt which said that he had given the debtor a check for $15,-060.33. He also explained then that the receipt reminded him the land was purchased with grain, PIK certificates, and cash. Third, at trial, Doug Toll testified that he paid for the land with only grain and PIK certificates and that he answered the interrogatory as he did because he had yet to find his receipt. These circumstances show that Doug Toll not only signed a false receipt but a false interrogatory. Moreover, his explanation for incorrectly answering the interrogatory is not particularly persuasive. Rather than committing clear error, the bankruptcy court had ample cause to reject the defendant's testimony as not credible.

### CROSS APPEAL

ISSUE: DID THE BANKRUPTCY COURT ERR IN DENYING THE TRUSTEE'S REQUEST FOR JUDGMENT AGAINST DOUG AND MAUREEN TOLL FOR THE NET PROFITS EARNED FROM THE PROPERTY?

The defendants contend the trustee's cross appeal is untimely. The defendants filed their notice of appeal on March 1, 1991. More than ten days later, on March 19, 1991, the trustee filed his motion for extension of time to file the notice of cross appeal. (Bkcy.Adv. No. 88–097 Dk. 57). The bankruptcy court heard this motion on April 9, 1991. The courtroom minute sheet reflects that the "motion was granted" and that Mr. McCullough, attorney for trustee, was directed to prepare the order. (Bkcy.Adv. No. 88–0097 Dk. 61). The record in the adversary action No. 88–0097 contains no such written order reflecting or explaining the bankruptcy court's decision to grant the trustee's motion for extension of time. The trustee maintains his notice of cross appeal was timely filed within the extended period properly allowed by the bankruptcy court.

■ The time for filing a cross appeal is specified in Bankr.Rule 8002(a) which provides in pertinent part:

The notice of appeal shall be filed with the clerk within 10 days of the date of the entry of the judgment, order, or decree appealed from. If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 10 days of the date on which the first notice of appeal was filed, or within the time otherwise prescribed by this rule, whichever period last expires.

Based upon the ten-day period computed under Bankr.Rule 9006(a), the trustee had until March 11, 1991, to file his notice of cross appeal unless a proper extension was granted. Extensions are governed by Bankr.Rule 8002(c), which reads:

The bankruptcy judge may extend the time for filing the notice of appeal by any party for a period not to exceed 20 days from the expiration of the time otherwise prescribed by this rule. A request to extend the time for filing a notice of appeal must be made before the time for filing a notice of appeal has expired, except that a request made no more than 20 days after the expiration of the time for filing a notice of appeal may be granted upon a showing of excusable neglect if the judgment or order appealed from does not authorize the sale of any property or the obtaining of credit or the incurring of debt under § 364 of the Code, or is not a judgment or order approving a disclosure statement, confirming a plan, dismissing a case, or converting the case to a case under another chapter of the Code.

Since the trustee's motion for extension was filed after March 11, 1991, but before April 2, 1991, the bankruptcy court properly extended the time for filing a notice of appeal only if the trustee carried his burden of showing excusable neglect.

■ An untimely notice of appeal is a jurisdictional defect barring the district court's appellate review of a bankruptcy court's order. *In re Herwit,* 970 F.2d 709, 710 (10th Cir.1992); *In re Franz,* 97 B.R. at

604. The requirement of a timely notice of appeal cannot be waived. *Matter of Topco, Inc.,* 894 F.2d 727, 733 n. 7 (5th Cir.1990).

■ "The bankruptcy court may extend the time for an appeal only as permitted by Rule 8002(c)." *In re Herwit,* 970 F.2d at 710 (citations omitted). A motion for extension filed after the appeal period but within twenty days of it may be granted only upon a showing of excusable neglect. Bankr.Rule 8002(c). The courts uniformly have considered "excusable neglect" to be a requirement that is "strictly construed and strictly applied." *In re GF Corp.,* 127 B.R. 382, 383 (Bankr.N.D.Ohio 1991); *see Matter of Ghosh,* 47 B.R. 374, 375 (E.D.N.Y.1984).[2] The movant must clearly show that the circumstances causing the delay were unique and that the neglect was excusable. *Fase v. Seafarers Welfare & Pension Plan,* 574 F.2d 72, 76 (2nd Cir. 1978) (quoted in *In re Bahre,* 30 B.R. 367, 368 (Bankr.D.Conn.1983)); *see Baker v. Raulie,* 879 F.2d 1396, 1399 (6th Cir.1989) (Extensions granted "only in unique or extraordinary circumstances."); *Gooch v. Skelly Oil Company,* 493 F.2d 366, 368, 370 (10th Cir.) (Extensions granted only upon a "real showing of excusable neglect" and under circumstances that "are unique or extraordinary."), *cert. denied,* 419 U.S. 997, 95 S.Ct. 311, 42 L.Ed.2d 270 (1974); *In re O'Connor,* 85 B.R. 590, 592 (W.D.Okla. 1987) (Extensions granted only upon "unique circumstances justifying excusable neglect.") (citing *Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc.,* 371 U.S. 215, 217, 83 S.Ct. 283, 285, 9 L.Ed.2d 261 (1962)). It is fair to say that the strict construction given "excusable neglect" means counsel are held to a "rigorous standard." *In re GF Corp.,* 127 B.R. at 383.

A lower court's finding of excusable neglect is reviewed for a clear abuse of discretion. *Ooley v. Schwitzer Div., Household Mfg. Inc.,* 961 F.2d 1293, 1306 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 208, 121 L.Ed.2d 148 (1992); *Gooch,* 493 F.2d at 368. Nonetheless, the exercise of this discretion is necessarily circumscribed by the case law interpreting and applying the excusable neglect standard. *Matter of Dayton Circuit Courts No. 2,* 85 B.R. 51, 54 (Bankr.S.D.Ohio 1988).

In the instant case, the bankruptcy court's minute sheet does not reflect what the court considered unique or extraordinary to justify the granting of trustee's motion. Without a written order on the motion or a transcript of the hearing on it, neither of which exist for this court to review,[3] it is not known what reasons the bankruptcy court had for its decision. In this situation, the court could construe the minute sheet as granting the trustee's motion for the reasons stated in the motion. *See Ooley,* 961 F.2d at 1306. In the alternative, the court could remand the case for a written order that would set forth the bankruptcy court's reasons. However, a remand serves no useful or logical purpose if the movant has failed to even allege circumstances warranting an extension. *See Baker v. Raulie,* 879 F.2d at 1399. Under either alternative, this court must decide whether the trustee's motion offers circumstances that could qualify as excusable neglect.

■ The trustee's motion fails to even mention the excusable neglect standard and offers two reasons which fall far short of being unique or extraordinary. The trustee first alleges that his counsel's "ability to keep abreast of this case" was

**2.** The strict construction of "excusable neglect" under Bankr.Rule 8002(c) mirrors what the courts have done with the same excusable neglect standard under Fed.R.App.P. 4(a)(5). In fact, most of the judicial gloss on "excusable neglect" developed in Rule 4 cases has been applied to Rule 8002(c) without hesitation. *See In re LBL Sports Center, Inc.,* 684 F.2d 410, 413 (6th Cir.1982); *Matter of Dayton Circuit Courts No. 2,* 85 B.R. 51, 55 (Bankr.S.D.Ohio 1988). For this reason, the court will cite interchange-ably Rule 4 and Rule 8002 cases in its discussion of excusable neglect.

**3.** It would appear the blame rests with the trustee for the lack of both. The bankruptcy court's file does not indicate the trustee ever sent a proposed order to the court on his motion for extension. The trustee's designation of record on appeal does not show that he requested the preparation or the inclusion of the transcript of the motion hearing on April 9, 1991.

"inhibited" by the taking of depositions in other cases. (Bkcy.Adv. No. 88–0097 Dk. 57). Consistently, courts have held that an attorney's preoccupation or involvement in other cases or litigation does not constitute excusable neglect. *See, e.g., Britt v. Whitmire,* 956 F.2d 509, 511 (5th Cir.1992); *Baker,* 879 F.2d at 1399–1400; *In re GF Corp.,* 127 B.R. at 383 (and cases cited therein); *In re Bahre,* 30 B.R. at 369. A "run-of-the-mill oversight" or omission is not extraordinary or unique. *Gooch,* 493 F.2d at 370. Moreover, "the filing of a notice of appeal does not require much thought or time and ... the fact that an attorney [is] 'busy' on another matter [does] not constitute excusable neglect." *Marsh v. Richardson,* 873 F.2d 129, 131 (6th Cir.1989) (citing *Pinero–Schroeder v. Federal National Mortgage Ass'n,* 574 F.2d 1117, 1118 (1st Cir.1978)).

<span class="redacted">■■■■</span> The other stated reason is that the trustee was waiting for the defendants to designate the record on appeal so that the need for a cross appeal could be assessed. This reason utterly fails to reach the level of excusable neglect. First, nothing prevented the trustee from filing a motion for extension within his original appeal period. Indecision over whether to appeal does not interfere with filing a timely motion to extend, nor does it constitute a unique circumstance. *In re O'Connor,* 85 B.R. at 592. Generally, excusable neglect requires that the person charged with the duty to act faces circumstances which are beyond his reasonable control, *Matter of Dayton Circuit Courts No. 2,* 85 B.R. at 54; or reasonable anticipation. *In re Bahre,* 30 B.R. at 368. Waiting on the appellant to designate the record is not a unique or extraordinary circumstance for a cross appellant. Since an appellant has ten days after filing the notice of appeal to file a designation of the record on appeal, Bankr.Rule 8006, it is very likely that in most cases the appellant will not file the designation in time for another party to consider whether a cross appeal was necessary.

Where the record, which in the case *sub judice* is only the trustee's motion, simply fails to sustain a finding of excusable neglect, the reviewing court has no choice but to find an abuse of discretion in the lower court holding otherwise. *See Gooch,* 493 F.2d at 368. The trustee's cross appeal is dismissed.

IT IS THEREFORE ORDERED that the bankruptcy court's memorandum of decision and judgment of decision filed on February 21, 1991, are affirmed in case No. 91–4036.

IT IS FURTHER ORDERED that the trustee's cross appeal constituting case No. 91–4046 is dismissed.