T.C. Memo. 2000-82


UNITED STATES TAX COURT


PATRICK E. CATALANO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12837-98.                    Filed March 9, 2000.


    P, a lawyer and owner of a law firm, purchased a
residence in 1988, which he financed in part by a
nonrecourse loan secured by a lien on the residence.
In 1994, P was named as a defendant in a number of law
suits arising from his law practice and filed for
ch. 11 bankruptcy protection.  In January 1995, the
bankruptcy court released P's residence from the automatic
stay imposed by the bankruptcy.  Later that year, the lender
foreclosed on P's residence.
    1.  <u>Held</u>: At the time of foreclosure P's residence
belonged to him, not the bankruptcy estate; thus P is
deemed to have paid all of the accrued and unpaid
mortgage interest on the nonrecourse indebtedness.
    2.  <u>Held</u>, <u>further</u>, P's personal bankruptcy was
proximately caused by liabilities arising from his law
firm; thus, he may deduct an allocable portion of his
bankruptcy fees as a business expense under sec. 162,
I.R.C.
    3.  <u>Held</u>, <u>further</u>, P is not liable for an
accuracy-related penalty under sec. 6662(b)(2), I.R.C.,
because he acted with reasonable cause and in good
faith.

Patrick E. Catalano, pro se.

Margaret S. Rigg, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


LARO, Judge:   This is a proceeding for redetermination of a deficiency in income tax and penalties for petitioner's 1995 tax year, as set forth below:

| Year | Deficiency | Sec. 6662 Penalty |
|------|------------|-------------------|
| 1995 | $70,198 | $14,040 |

After concessions,[1] we must determine the following issues:

(1) Whether a deduction for mortgage interest of $126,352 claimed by petitioner in connection with the foreclosure of his residence is allowable.  We hold he may deduct $83,425 of this expense.

(2) Whether a deduction of $46,462 claimed by petitioner for legal, accounting, and U.S. trustee's fees (bankruptcy fees) he paid in connection with his individual bankruptcy is allowable as an ordinary and necessary business expense under section 162.  We hold he may deduct $41,574 of this expense.

(3) Whether petitioner is liable for the accuracy-related penalty under section 6662(b)(2) for substantial understatement of tax liability.  We hold he is not.

---

[1]Petitioner concedes an adjustment in the amount of $2,722 which disallowed a loss claimed for the rental of one of his boats.

Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year in issue. Rule references are to the Tax Court Rules of Practice and Procedure. Dollar amounts are rounded to the nearest dollar.

FINDINGS OF FACT

Some of the facts are stipulated and are so found. The stipulation of facts and exhibits submitted therewith are incorporated herein by this reference.

Petitioner is an attorney who practiced law through his wholly owned corporation, Patrick E. Catalano Professional Corp. (petitioner's law firm), during all relevant times. The law firm had offices in San Francisco and San Diego, California. When petitioner filed his petition in this case, he resided in San Francisco, California.

a.    Foreclosure of Petitioner's Residence

In 1988, petitioner purchased a residential condominium in San Francisco, California (petitioner's residence), for $1,800,000. Wells Fargo Bank (Wells Fargo) financed $1,400,000 of the purchase price, secured by a lien on petitioner's residence. Petitioner ceased making payments of either interest or principal on the Wells Fargo note as of June 1, 1994.

In July 1994, petitioner and his law firm each filed a voluntary petition for bankruptcy under chapter 11 in the U.S. Bankruptcy Court for the Northern District of California (bankruptcy court). At the time petitioner filed his bankruptcy

petition he owned two homes, his San Francisco residence and a second home in San Diego, California. Petitioner's San Diego home was sold by the bankruptcy estate for an amount exceeding the outstanding mortgage on the property.

As a result of the filing of petitioner's individual bankruptcy, an automatic stay was imposed against the property of the bankruptcy estate in accordance with 11 U.S.C. sec. 362 (1994). In December 1994, Wells Fargo moved the bankruptcy court for relief from the automatic stay and requested permission to conduct a trustee's sale of petitioner's San Francisco residence. Petitioner opposed the relief from stay on the ground that the property had a value substantially greater than the outstanding debt. On January 23, 1995, the bankruptcy court granted Wells Fargo's motion for relief from the stay.

On March 9, 1995, Wells Fargo filed a Notice of Default on the Deed of Trust on petitioner's residence. One day later, petitioner listed his residence for sale with a broker, and on May 8, 1995, petitioner entered into a contract to sell the property subject to the bankruptcy court's approval. Sometime thereafter, the buyer backed out of the sale.

On July 21, 1995, Wells Fargo filed a Notice of Trustee's Sale. On August 10, 1995, the Trustee under the Deed of Trust conducted a trustee's sale of petitioner's residence (the foreclosure) at which Wells Fargo purchased the property with a bid of $1,215,000. At foreclosure there remained an outstanding

principal balance of $1,341,352 on petitioner's mortgage.[2]

On July 19, 1999, petitioner received a discharge, and his bankruptcy was closed by final decree.  No Federal income tax returns were ever filed for petitioner's bankruptcy estate for 1995.

b.    Bankruptcy Fees

Petitioner reported a nonpassive loss in the amount of $46,462 on Schedule E, Supplemental Income and Loss, of his 1995 Federal income tax return attributable to his business interest in MACAT Automotive Group (MACAT).  MACAT was an S corporation owned by petitioner at some time prior to 1995 that operated an automobile dealership.  MACAT ceased doing business in 1992.  The last Federal income tax return filed for MACAT was for its 1992 taxable year.  The figure petitioner deducted as an MACAT loss represented legal, accounting, and U.S. trustee's fees (bankruptcy fees) petitioner claims he paid in the course of his individual bankruptcy proceedings in 1995.

OPINION

Issue 1.  Mortgage Interest Deduction

a.    Entity Entitled to Deduction

Whether petitioner may deduct the interest paid in the foreclosure of his residence requires that we first determine

---

[2]The debt at issue in this case was secured under a deed of trust.  However, the terms "mortgage" and "deed of trust" will be used interchangeably herein as they were in the testimony at the trial and in the briefs.

whether he or the bankruptcy estate bore the tax consequences of the foreclosure. Respondent argues that petitioner's residence was property of the bankruptcy estate at the time of the foreclosure and thus any interest paid in the foreclosure was deductible solely by the estate. Petitioner argues that the property was removed from the estate when the bankruptcy court granted Wells Fargo's request for a relief from stay.

A bankruptcy estate is created as a separate taxable entity upon the filing by an individual of a chapter 11 bankruptcy petition. See sec. 1398.[3] The estate comprises all legal and equitable interests of the debtor in property. See 11 U.S.C. sec. 541.[4]

Petitioner argues that his residence was effectively abandoned by the estate when the bankruptcy court granted Wells Fargo's motion for a relief from stay. Both parties agree that the disposition of property abandoned by a trustee in bankruptcy will produce no tax consequences for the bankruptcy estate. See

---

[3]Sec. 1398 was added by sec. (3)(a)(1) of the Bankruptcy Tax Act of 1980, Pub. L. 96-589, 94 Stat. 3389, 3397-3400, and is applicable to bankruptcy cases commencing on or after Mar. 25, 1981. See Bergman v. Commissioner, T.C. Memo. 1985-256.

[4]11 U.S.C. sec. 541 (1994) provides, in relevant part:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1)* * * all legal or equitable interests of the debtor in property as of the commencement of the case.

In re Olson, 930 F.2d 6 (8th Cir. 1991). However, respondent asserts that the lifting of the automatic stay, without more, is not an abandonment.

Some courts have indicated that a lifting of a stay, in and of itself, does not necessarily remove property from a bankruptcy estate. See In re B.S. Livingston & Co., 186 Bankr. 841, 858 (D.N.J. 1995); In re Nebel, 175 Bankr. 306, 311-312 (Bankr. D. Neb. 1994); In re Cordry, 149 Bankr. 970, 973-974 (D. Kan. 1993); In re Oakes, 129 Bankr. 477, 479 (Bankr. N.D. Ohio 1991); In re Ridgemont Apartment Associates, 105 Bankr. 738, 741 (Bankr. N.D. Ga. 1989). Other courts indicate that granting relief from the automatic stay is itself an abandonment or otherwise removes bankruptcy court jurisdiction over the subject property. See In re Olympia Holding Corp., 161 Bankr. 524, 528 n.4 (M.D. Fla. 1993); In re Hood, 92 Bankr. 648, 655 (Bankr. E.D. Va. 1988), affd. 92 Bankr. 656 (E.D. Va. 1988); In re Griggs, 82 Bankr. 532, 533 (Bankr. W.D. Mo. 1988); In re Fisher, 80 Bankr. 58, 62 (Bankr. M.D. N.C. 1987).

Petitioner's argument is bolstered by the holding in Wilson v. Bill Barry Enters., Inc., 822 F.2d 859 (9th Cir. 1987). In Wilson, the bankruptcy court granted a lessor relief from the automatic stay to commence State court proceedings to recover possession of property from a bankrupt lessee. The lessee later petitioned the State court for relief from forfeiture of the lease. After the petition was removed to the Federal District

Court, the latter court dismissed the petition on the ground that the relief sought was within the exclusive jurisdiction of the bankruptcy court. The Court of Appeals for the Ninth Circuit reversed, holding that by lifting the automatic stay, the bankruptcy court relinquished any subject matter jurisdiction it had over the lessee's right to seek reinstatement of the lease. See id. at 861.[5] Venue for an appeal of the instant case would be the Ninth Circuit. We hold that the relief from stay as to petitioner's residence was an abandonment whereby the property effectively reverted to petitioner. As a result, petitioner, and not the bankruptcy estate, must take into account the tax consequences of the foreclosure of petitioner's residence.

b.  Amount of Interest Deemed Paid

Petitioner asserts that because the fair market value of his residence at the time of the foreclosure was higher than the principal and interest due, he was deemed to have paid the accrued mortgage interest in the foreclosure sale. Respondent counters that the fair market value of petitioner's residence was less than the outstanding mortgage principal, and thus the foreclosure produced no proceeds that could be allocated to an interest payment.

_____

[5]Moreover, in granting the relief from stay in the present case, the bankruptcy court rejected petitioner's argument that his residence had equity which could be recovered by the estate. See In re Olympia Holding Corp., 161 Bankr. 524, 528 n.4 (M.D. Fla. 1993) (a bankruptcy court loses jurisdiction over property upon the lifting of the stay "when there is no possibility a surplus will remain").

Under the facts of this case, both parties err by looking to the fair market value of the property to determine the amount of interest petitioner is deemed to have paid. Importantly, respondent concedes that the Wells Fargo note was either nonrecourse or treated as nonrecourse under California law.[6] Therefore, as we shall explain, fair market value is a neutral factor in the determination of the amount of interest petitioner is deemed to have paid in the foreclosure of his residence.[7]

A foreclosure sale, in which the collateral is repossessed from the debtor, constitutes a taxable sale or exchange by the debtor of the encumbered property. See Helvering v. Hammel, 311 U.S. 504 (1941); Estate of Delman v. Commissioner, 73 T.C. 15, 28 (1979). The debtor's gain or loss in the transaction is measured by the difference between the amount realized in the disposition of the property and the debtor's basis in the property. See Crane v. Commissioner, 331 U.S. 1 (1947). When, as here, a debtor sells or disposes of property encumbered by a nonrecourse obligation, the amount realized by the debtor includes the full outstanding balance of the nonrecourse debt even if the liabilities exceed the fair market value of the property. See Commissioner v. Tufts, 461 U.S. 300, 317 (1983); sec. 1.1001-

---

[6]California is an antideficiency jurisdiction that prohibits lenders from seeking a judgment against borrowers with respect to a purchase money mortgage. See Calif. Civ. Proc. Code sec. 580b (West 1982); Freeland v. Commissioner, 74 T.C. 970, 971 (1980).

[7]We thus make no specific finding as to fair market value.

2(c)(2), Example (7), Income Tax Regs. Moreover, the amount realized on the disposition of property subject to nonrecourse debt may include both the principal balance and accrued interest. See Allan v. Commissioner, 856 F.2d 1169 (8th Cir. 1988), affg. 86 T.C. 655 (1986) (rejecting the Government's argument that interest should be included in the amount realized only where such interest was included in the taxpayer's depreciable cost basis). Thus, the amount petitioner realized upon the disposition of his residence in foreclosure included both the principal indebtedness and the interest that had accrued as of the foreclosure date.[8]

The inclusion of the accrued interest in the amount realized is determinative of whether petitioner is deemed to have paid the interest in foreclosure. We have held that where a liability is extinguished in exchange for an asset, "the transaction is treated as if the transferor had sold the asset for cash equivalent to the amount of the debt and had applied the cash to the payment of the debt." Unique Art Manufacturing Co. v. Commissioner, 8 T.C. 1341, 1342 (1947) (citing Peninsula Properties Co. v. Commissioner, 47 B.T.A. 84 (1942)). Because the amount petitioner realized in the foreclosure of his residence included both principal and accrued interest, he is

---

[8]Respondent makes no suggestion that this was not a genuine debt obligation. See, e.g., Estate of Franklin v. Commissioner, 544 F.2d 1045, 1048-1049 (9th Cir. 1976) (denying an interest deduction with respect to an indebtedness that was not genuine), affg. 64 T.C. 752 (1975).

appropriately deemed to have paid the interest in the disposition of his residence.

Respondent contends that our holding in Lackey v. Commissioner, T.C. Memo. 1977-213, requires that the fair market value of foreclosed property exceed the principal indebtedness before any amount can be allocated to interest. In Lackey, the taxpayer claimed a deduction for interest paid on the disposition in foreclosure of property he conceded had a value lower than the outstanding indebtedness. The taxpayer argued that he was nevertheless entitled to an interest deduction because State law required that partial payments on indebtedness be allocated first to interest and then to principal. We denied the deduction based on precedent holding the "interest first" rule to be inapplicable where the debtor is insolvent. Respondent's reliance on Lackey is nevertheless misplaced because the case involved a recourse loan,[9] and thus was governed by different principles of realization.

More relevant to our analysis is our holding in Harris v. Commissioner, T.C. Memo. 1975-125, affd. without published opinion 554 F.2d 1068 (9th Cir. 1977), which, like the transaction at issue, involved the deemed payment of interest in

---

[9]We stated in Lackey v. Commissioner, T.C. Memo 1977-213, that "there was little likelihood that * * * [the lender] would receive any payments from petitioners other than the proceeds from the foreclosure sales." (Emphasis added.) Had the debt been nonrecourse, the bank would have had no opportunity to seek payments other than from the proceeds of the foreclosure sales.

the foreclosure of property secured by a nonrecourse loan. The taxpayer in Harris owned a one-half interest in an apartment building that he lost in a foreclosure sale. In the months leading up to the foreclosure the holder of the second trust deed (the lienholder) had paid the outstanding interest and taxes to the holder of the first trust deed. The lienholder later foreclosed on the property. We permitted the taxpayer to deduct the full amount of interest and taxes paid by the foreclosing lienholder.[10] We similarly hold that petitioner is entitled to the interest deduction here.

    c.    Deductible Amount of Qualified Residence Interest

Respondent asserts that petitioner is entitled to no interest deduction because petitioner has failed to establish the amount of accrued interest as of the foreclosure date. While petitioner has introduced no single document reflecting this amount, it is nevertheless determinable from the record as a whole.

The "Adjustable Rate Rider" to the Deed of Trust indicates that the interest rate Wells Fargo charged to petitioner was a flexible rate with a floor of 6.95 percent and a ceiling of 12.95

---

[10]Although Harris v. Commissioner, T.C. Memo. 1975-125, affd. without published opinion 554 F.2d 1068 (9th Cir. 1977), was decided prior to Commissioner v. Tufts, 461 U.S. 300 (1983), Harris applied a similar analysis by including the total amount of the outstanding nonrecourse indebtedness in the amount realized by the debtor in the foreclosure.

percent.[11]  The Notice of Trustee's Sale, dated July 21, 1995, specifies that a principal sum of $1,341,352 had been outstanding since June 1, 1994, at the rate of "7 per cent per annum".  In the absence of any evidence to the contrary, we presume that this rate remained in effect during the entire period from June 1, 1994 (the date of default), to August 10, 1995 (the foreclosure date).[12]  Thus, prior to the foreclosure, interest accrued at an annual rate of 7 percent for a total of 435 days.

While the principal amount of the debt upon which the interest accrued was $1,341,342, for debts incurred after October 13, 1987, section 163(h) restricts the residential mortgage interest deduction to interest paid on $1 million of acquisition indebtedness.  See Pau v. Commissioner, T.C. Memo. 1997-43. Petitioner's mortgage was incurred on November 14, 1988.  Thus, using simple interest, we determine that a total of $83,425 (i.e., $1,000,000 × (.07 ÷ 365) × 435) in deductible interest accrued prior to the foreclosure.[13]

---

[11]The rate was linked to changes in the rate established for certain negotiable Certificates of Deposit, as quoted by the Federal Reserve Bank of New York.

[12]The Adjustable Rate Rider provides for the interest rate to be re-indexed every 6 months beginning June 1, 1993.  As a result, there would have been no change in the interest rate between July 21, 1995 (the date of the Notice of Trustee's Sale), and August 10, 1995 (the foreclosure date).  Additionally, the Notice of Trustee's Sale gives no indication of any change having occurred on either December 1, 1994, or June 1, 1995.

[13]Respondent first raised the sec. 163(h) limitation in his
(continued...)

Issue 2.  Deductibility of Bankruptcy Fees

Petitioner contends that he may deduct the bankruptcy fees he paid as ordinary and necessary business expenses under section 162 because his bankruptcy was caused by a combination of the failure of MACAT and the lawsuits stemming from his legal practice.

Ordinary and necessary expenses paid or incurred during the year in carrying on a trade or business are deductible under section 162(a).  However, personal, living, or family expenses are disallowed under section 262.  Whether an expense is a deductible trade or business expense, or a nondeductible personal, living, or family expense, depends on the origin of the claims giving rise to the fees.  See United States v. Gilmore, 372 U.S. 39 (1963).

---

¹³(...continued)
posttrial brief.  Petitioner concedes that the limitation is applicable in this case, but contends that this issue was raised too late for it to be properly considered.  We disagree.  "[T]he Commissioner does not necessarily forfeit his right to rely on a theory by failing to raise it at the preferred times. 'The basic consideration is whether the taxpayer is surprised and disadvantaged * * * .'"  Stewart v. Commissioner, 714 F.2d 977, 986 (9th Cir. 1983) (quoting Commissioner v. Transport Manufacturing & Equip. Co., 478 F.2d 731, 736 (8th Cir. 1973)).  Petitioner was not surprised or disadvantaged by respondent's tardiness.  Respondent placed the deductibility of the mortgage interest at issue when he denied petitioner's deduction.  Additionally, sec. 163(h) is an express statutory limitation that is mechanically applied, and there are no underlying facts in dispute.  See Levy v. Commissioner, T.C. Memo. 1991-646 (permitting the IRS to challenge the taxpayer's method of calculating its depreciation deduction even though issue was first raised in the Commissioner's posttrial brief).

Petitioner argues that our holding in Cox v. Commissioner, T.C. Memo. 1981-552, is applicable here to allow him to deduct his bankruptcy fees under section 162. We agree. In Cox, we found that taxpayers' bankruptcy had been "proximately caused" by their business liabilities where $159,823 out of $163,820 (or more than 97 percent) of the taxpayers' liabilities in bankruptcy were attributable to their business creditors. We held that an allocable portion of the bankruptcy fees was deductible as an ordinary and necessary business expense under section 162. See also Scofield v. Commissioner, T.C. Memo. 1997-547 (permitting taxpayer to deduct bankruptcy legal expenses where the debts listed in his bankruptcy petition related "almost exclusively" to his corporation).

Here, $2,915,215[14] out of $3,108,382[15] (or 93.79 percent) of petitioner's liabilities in bankruptcy was business

---

[14]This figure represents five lawsuits relating to petitioner's businesses in which he was personally named as a defendant. The claimants were as follows: Carbon Beach Property Venture ($500,000), Florin Meadows I & II ($1,958,797), John Schueler ($6,418), Frank L. & Margie Hammersley ($50,000), and Milton & John Ullman ($400,000).

[15]Petitioner's bankruptcy schedules report total liabilities of $6,350,812. We exclude the mortgages on petitioner's two homes (in the amounts of $675,419 and $1,345,609) from his personal debts because they were nonrecourse and/or fully collateralized and thus a bankruptcy discharge would not have affected their collectibility. We also exclude the full $1,221,402 indebtedness on petitioner's office building from his business debts because he did not establish that the loan was recourse and undersecured.

liabilities.[16]  Therefore, we similarly find that petitioner's bankruptcy was proximately caused by his business liabilities.

Having determined that petitioner's bankruptcy was proximately caused by the failure of his business, we turn to determining what portion of the bankruptcy fees is deductible. Respondent argues that any allocation of the bankruptcy fees between business and personal pursuits should be based on the time spent by the attorneys, accountants, and trustee dealing with each of the bankruptcy liabilities.  We disagree.  We set forth a reasonable method of allocation in Cox v. Commissioner, supra, under which we allowed the taxpayer to deduct a percentage of the bankruptcy fees paid equal to the ratio that the claims of the taxpayer's business creditors bore to the total claims.  We do the same here and allow petitioner to deduct 93.79 percent of his substantiated bankruptcy fees.  Because petitioner substantiated that he paid a total of $44,327 in bankruptcy fees in 1995,[17] he may deduct $41,574 of these fees under section 162 (i.e., $44,327 × .9379).

_____

[16]Petitioner also cites his prior loss of $1 million in MACAT as an additional significant contributing factor to his personal bankruptcy.  Because petitioner failed to establish the actual timing or amount of this loss, we limit our consideration to the liabilities listed in the bankruptcy schedules.

[17]Petitioner points to the docket sheets for the bankruptcy court proceedings as evidence that he paid bankruptcy fees in excess of $49,000.  The docket sheets reflect only that the court approved payment of the fees out of the bankruptcy estate, not that petitioner personally paid them.  Petitioner has established that he personally paid only $44,327.

Issue 3.  Section 6662(a) Penalty

Respondent determined that petitioner was liable for an accuracy-related penalty under section 6662(a) because he substantially understated his Federal income tax.  See sec. 6662(b)(2).  Section 6662(a) imposes an accuracy-related penalty equal to 20 percent of an underpayment that is due to a substantial understatement of income tax.  Petitioner will avoid this penalty if the record shows that his income tax was not understated by the greater of 10 percent of the tax required to be shown on the return or $5,000.  See sec. 6662(d)(1)(A).  The accuracy-related penalty of section 6662 is not applicable to any portion of an underpayment to the extent that an individual has reasonable cause for that portion and acts in good faith with respect thereto.  See sec. 6664(c)(1).  Such a determination is made by taking into account all facts and circumstances, including the experience and knowledge of the taxpayer and his or her reliance on a professional tax adviser.  See sec. 1.6664-4(b)(1), Income Tax Regs.

The record demonstrates that petitioner acted reasonably with respect to reporting his income for 1995.  His accountant testified that petitioner consulted with him and supplied him with the information necessary to prepare his return.  The accountant advised petitioner on what he believed was the correct reporting position of the items reported in the return, and

petitioner relied on and followed that advice.  Petitioner's reliance on the accountant to prepare a correct return was reasonable.  We hold for petitioner on this issue.

We have considered all arguments in this case, and, to the extent not discussed above, find those arguments to be irrelevant or without merit.  To reflect the foregoing and concessions,

<u>Decision will be entered</u>

<u>under Rule 155.</u>